DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

YINETTE MARIA NUNEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D20-2680

_____

September 1, 2021

Appeal from the Circuit Court for Pinellas County; William H. Burgess, III, Judge

Jorge León Chalela of Jorge León Chalela, P.A, Tampa, for Appellant.

MORRIS, Chief Judge.

Yinette Nunez appeals the summary denial of her motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850, in which she alleged that she pleaded guilty to four charges in 2018 without having been advised by her counsel of

the "immediate" and "certain" deportation consequences of her pleas. We reverse and remand for further proceedings.

The postconviction court analyzed Nunez's claim under *Padilla v. Kentucky*, 559 U.S. 356 (2010), which holds that counsel has a duty to provide correct advice about the deportation consequences of a plea when those consequences are clear from the relevant immigration statute, and *Cano v. State*, 112 So. 3d 646, 648 (Fla. 4th DCA 2013), which requires certain showings where a defendant received an "equivocal" warning by the trial court at the plea hearing as provided for in Florida Rule of Criminal Procedure 3.172(c)(8).[1] In *Cano*, the Fourth District recognized that "an 'equivocal' warning . . . is not on its own sufficient to refute a claim that counsel was ineffective in failing to advise a defendant about 'truly clear' deportation consequences." 112 So. 3d at 647 (quoting *Hernandez v. State*, 124 So. 3d 757, 763 (Fla. 2012)). But the *Cano*

---

[1] The warning was amended in 2015, is now found in rule 3.172(c)(8)(A), and requires a trial court to advise a defendant that "[i]f the defendant is not a citizen of the United States, a finding of guilt by the court, and the court's acceptance of the defendant's plea of guilty or no contest, regardless of whether adjudication of guilt has been withheld, *may* have the additional consequence of changing his or her immigration status, including deportation or removal from the United States." (Emphasis added.)

court "clarif[ied] what a movant must establish to be entitled to relief" when the movant has received the standard rule 3.172(c)(8) warning.  Such a movant

> must establish the following: (1) that the movant was present in the country lawfully at the time of the plea; (2) that the plea at issue is the sole basis for the movant's deportation; (3) that the law, as it existed at the time of the plea, subjected the movant to "virtually automatic" deportation; (4) that the "presumptively mandatory" consequence of deportation is clear from the face of the immigration statute; (5) that counsel failed to accurately advise the movant about the deportation consequences of the plea; and (6) that, if the movant had been accurately advised, he or she would not have entered the plea.

*Id.* at 648; *see Yanez v. State*, 170 So. 3d 9, 10-11 (Fla. 2d DCA 2015) (quoting the pleading requirements in *Cano* and affirming an order denying rule 3.850 relief because by admitting that she was in the country unlawfully, movant could not show that she "was present in the country lawfully at the time of the plea" or "that the plea at issue is the sole basis for" her deportation); *see also Balcazar v. State*, 116 So. 3d 575, 576 (Fla. 2d DCA 2013) (citing *Cano* as "listing the full set of pleading requirements for a claim of ineffective assistance of counsel under *Padilla*").

3

The postconviction court found, and the record supports, that Nunez received the equivocal warning provided for in rule 3.172(c)(8). Nunez received the warning when she pleaded guilty in 2018 to the felonies of child abuse and battery on a law enforcement officer in exchange for three years' probation and to two misdemeanor charges of battery and disorderly intoxication in exchange for time served.[2] Thus, the pleading requirements in *Cano* apply here.[3]

The postconviction court also found that the record showed that the 2018 pleas at issue are not the sole basis for Nunez's

---

[2] We note that Nunez received the warning again when she admitted to violating that probation in 2019, by committing a new 2019 charge of uttering forged checks, in exchange for sentences of 22.5 months in prison on both counts.

[3] We distinguish the cases of *Blackwood v. State*, 217 So. 3d 1146, 1147-48 (Fla. 2d DCA 2017), and *Huerta v. State*, 228 So. 3d 626, 628 (Fla. 2d DCA 2017), which themselves distinguished *Cano*. In *Blackwood*, the record reflected "that the trial court did not give [the defendant] a rule 3.172(c)(8) warning during his plea colloquy" and thus "there was no record evidence that [the defendant], a noncitizen, received any warning of potentially adverse immigration consequences before entering his plea." 217 So. 3d at 1148. And *Huerta* relies on *Blackwood* and does not address whether the defendant in that case was given an equivocal warning by the trial court. 228 So. 3d at 628. Thus, those cases do not apply to a situation in which a defendant was given the warning in rule 3.172(c)(8).

4

deportation, a requirement in *Cano*. While we agree with *Cano* that Nunez must establish this requirement in order to be entitled to relief, we disagree that the record refutes this requirement. Nunez's probation was revoked in 2019 when she entered a guilty plea to one new charge of uttering forged checks, a third-degree felony, for which she received a sentence of 22.5 months in prison.[4] Such a conviction and sentence *may* subject her to deportation *if* the offense was committed within five years of her admission or within ten years if she had been provided lawful permanent resident status. *See* 8 U.S.C. § 1227(a)(2)(A)(i); *Walker v. U.S. Att'y Gen.*, 783 F. 3d 1226, 1229 (11th Cir. 2015) (holding that uttering a forged instrument is a crime of moral turpitude for purposes of the deportation statutes). The postconviction court failed to acknowledge that such a crime must be committed within a certain amount of time in order to trigger deportation, and it is not clear from the record when Nunez entered the United States or what her

---

[4] Nunez did not allege in her rule 3.850 motion that she was seeking to withdraw the plea in the 2019 uttering case. And at the 2019 VOP/plea hearing, Nunez's counsel indicated that Nunez had consulted with an immigration attorney before she entered her admissions and plea.

5

status was when she entered or at the time of any of the offenses at issue. The postconviction court also found that Nunez had not established that the 2018 convictions were the sole basis for deportation because Nunez admitted in her motion that an immigration detainer was not placed on her until December 11, 2019, thus suggesting that the deportation is due to the uttering conviction. However, it is not clear from the record that Nunez is subject to deportation for the 2019 uttering conviction or that the immigration detainer is due to that 2019 conviction.

In sum, while we agree that the requirements of *Cano* are applicable, we cannot conclude based on our limited record that Nunez is unable to establish entitlement to relief under *Cano*. Accordingly, we reverse the order denying her rule 3.850 motion and remand for the postconviction court to allow her an opportunity to amend her motion to establish a facially sufficient claim under *Cano*. *See* rule 3.850(f)(2); *Spera v. State*, 971 So. 2d 754, 761 (Fla. 2007). We note that in addition to failing to allege that the 2018 pleas are the sole basis for her deportation, Nunez's motion also failed to allege that she was in the country lawfully at the time she entered the plea, that the law as it existed at the time of the plea

6

subjected her to "virtually automatic" deportation, and that the "presumptively mandatory" consequence of deportation is clear from the face of the immigration statute. On remand, Nunez must satisfy these pleading requirements in order to be entitled to relief.

Reversed and remanded with directions.

SILBERMAN and LUCAS, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.